My name is Joel Robbins and I represent Nick Tarr. And we're here because on Halloween of 2002, less than a week before an election, which would decide a proposition that Nick Tarr was a spokesperson for, a proposition which Sheriff Arpaio was a spokesperson against. What was the proposition? It was a question of whether or not gaming would be allowed in racetracks, which was Nick Tarr's proposition that he was supporting, or it would only be allowed on Indian reservations. Nick Tarr was the spokesperson. He was portrayed as Joe Arizona, and his tagline was, do the math. So the plaintiff wanted the proposition where they could have gambling at the racetrack and the sheriff wanted only at the Indian reservation. Correct. And the whole thing was... That tells me what it was all about. Do the math. It will make all the difference in the revenue in the world. Nick Tarr, on Halloween, came into a restaurant called Tom's Tavern, which is a bar. It sounds like a joke. A guy walks into a bar wearing pink underwear and gets arrested. He was wearing a uniform or a costume with one, two, and arguably three badges, but the badge that we don't hear about is the portrayal of the badge on the pink underwear. These are called shoulder patches. These are not what you flash when you want to pull someone over. So you're saying the police there don't usually wear pink underwear to shows? There's a side conversation that was held that's not in the record, which is interesting for the highway patrol we're talking about. That's not our new uniform. This was an exhibit at trial, I think. The trial actually hasn't been held. I'm sorry. This was an exhibit at... We saw the pictures. Yes, the photographs are within the... And those pictures, they're all exhibits on the summary judgment motion? Yes. So we're allowed, we can use them to make our decision? These photographs you have in your blue brief, they're the ones that you used at the court? At the court, yes, Your Honor. They also were affidavits describing the uniform, describing the pink underwear. But as you can see... Why didn't you bring him in to wear it? I would have loved... You know, Your Honor, this is the second question that I've been asked. When I went back to the state court to argue this case, he asked me one question, and his first question, how the hell did you lose this case? And honest to God, I couldn't answer him. These color pictures, incidentally, in your brief are tremendously helpful. I don't know why everybody doesn't do that now that everybody has inkjet printers. Everyone doesn't have this case because I guarantee you, a color picture of that first case you guys reviewed today... We don't get a lot of pink underwear cases, but we get a lot of cases where the pictures would help. It is a very colorful case. What's your best authority, incidentally? Do you have another case where the police arrested somebody for impersonating a policeman, and he obviously wasn't, and the court said no qualified immunity, go to trial? Well, if you're going to take that interpretation, there is no specific case on point. But the lower court actually got past those parts of the Saussure analysis and said that since 1979 it's been a requirement that there be probable cause. They said it's been well established, and then they went to the last step of the Saussure analysis and said could a reasonable police officer, under the circumstances, be confused about the presence of the badges versus the patches? I understand your distinction between this case and the retired policeman at the gun show case. Yes. What I'm asking for, do you have something we can hang our hat on other than the doctrine of some case that's just like yours? No, of course not, because no one in the world is insane enough to have arrested someone for wearing a badge at the highway patrol when you've got two tin badges on a shirt. That's a little hyperbole. As I understand it, this arrest that took place was not impersonating a police officer. It was wearing a badge that there is a state law that forbids it. Yes. And when you showed us there, there were badges on there. Yes. Yes, there are three badges, and none of them are similar to the one of the highway patrol. The highway patrol has seven different stars. But it doesn't say in the statute highway patrol badges. It says badges. It says badge of the highway patrol. No, it actually does. It is ARS 41-1754. There are two subsections to it. He was not arrested according to the ticket. They didn't cite which one it was. The first one is, if a person without authority wears the badge of a member of the highway patrol or department of public safety. Or a badge of similar design that would tend to deceive. Right. And tend to deceive would be the part that actually requires a no one has said that that is, that those badges tend to deceive people to believe that it's a highway patrol badge. Specifically, what does? Well, you know, I don't know. I've been to Arizona a few times. But I couldn't have told you how many points there are. I know all badges have points. But that's number one. Number two is impersonates a member of the highway patrol. That was not charged, though, as I understand it. It was actually charged just generally as 41-1754 with no designation as to whether it was the first or the second clause. The lower court in its minute entry or in its order on page 7 found that the second one would not apply, that he could not. Okay. So we're back up where's the badge. Correct. But then he, then there's a difference between a badge and a patch. There is a difference between a badge and a patch. And that's where we have the problem in this case. The lower court has said that if the court, if the police officers had read and misinterpreted the McLam case, which dealt with a city ordinance, that somehow they could have then been confused that there may have been a law out there that prohibited the use of the insignia of the highway patrol. However, the, a mistake of law will not support a qualified immunity case. You can't say, well, I think there's a statute somewhere. They literally spent an hour and pulled out the book. And this was the best they could do after an hour was to say that the badge, that they didn't say the badge is here. They said a patch is a badge, therefore, we're going to give you a citation. They did not actually. What do the badges say on them? As far as badges. This badge says Sheriff Nick, which would be, there are no, there are no DPS officers or DPS officers. If you look at the, on page seven of our brief, it actually has a picture of the badge and it says officer. And this one says Sheriff Joe, which was intended also. This says Sheriff Joe, you know, go Joe, Sheriff Joe Arpaio is our sheriff. I'm sorry. I interrupted. What, what did the court do with the word badge? Did it require it to be one of the medal badges? No. The court basically said because of the McLamb case, which interpreted or held that an Arizona or a Phoenix ordinance, a city ordinance, that prohibited the use of a badge or the insignia. Yeah. That somehow if the, if hypothetically the, the police officers had read that case and misinterpreted it. But that was, that was a different ordinance with a different interpretation. Correct. But here, is there anything that shows that a badge is something made of metal? Well, we've discussed that. If you look at the definition in the Oxford English Dictionary, which is what the judge cited in the lower order, it says that it is a sign of office. And if you look at the badge that the highway patrol uses on it, it says officer. There's nothing about that. You know, I mean, it's very hard to argue that this in any way can be construed as a badge, nor did anyone refer to it as a badge prior to going to court. They referred to it as there were patches on the sleeves, and then there were, you know, either airport badges, dine-for badges. No one understood it. I was having trouble with the magistrate judge's opinion. I was, too. Sorry. Excuse me. It was very rude of me. I was having trouble with the magistrate judge's opinion, because just as he's coming to this badge, and I think I bet he's going to talk about badge of courage or something, I got to page 12, and it was missing from my excerpt. If you have page 12, it didn't get into my excerpt. It didn't get into my colleagues. Thank you. Thank you. All right. Thank you. Did the district court make any finding regarding the badges that were on the costume? No finding of fact at all regarding whether they were similar to or nothing? No, Your Honor. No discussion at all of the badges on the costume? No, because the badges, no one intended to confuse anyone or tended to confuse people when they are labeled Sheriff Joe. They're very cheap-looking, metallic badges with six points on them. No one argued that. They said that, hey, these are official insignia of the Highway Patrol, and therefore they're badges. But the difficulty with that approach is that there is no one, no one had confused those with badges. No one claimed that they were badges. They were identified in the police report as being patches. They were discussed throughout the case as being patches, but then one of the sheriff's officers or detectives said, well, I think a badge is a patch. A patch is a badge. A badge is a patch. That's what I think. So his subjective belief in deposition at page, at one page of his deposition, was used to then say, well, gosh, a badge or a patch could be a badge. But if that's the standard that we use, we stand or we base our system of justice on a foundation of sand, because the defendants can always say, I thought that red was green. I thought that, and in this case, that is the complaint that we have. Can I see that page 12, please? Mine is missing, too, from the magistrate judge. I didn't get it either. After you can give it to our clerk, she'll make photocopies of it. None of us got page 12. Thank you. There seems to be a difference of opinion as to whether a badge is metal or whether it's something that's cloth. We actually disagree. Yes. What does the record show as to the understanding of the arresting police officers? The understanding of the arresting police officers was set forth in the deposition testimony which we attached to the appendix of record. There were two significant portions of the record which was contained in the index of records that we gave the court. The one is where I'm asking the officer. Which was the arresting officer? What's his name? His name is Whitney. Whitney. Whitney was the arresting officer. The other was Officer Bailey. Whitney and Bailey revealed that they do understand the distinction. Right. In the deposition. Correct. And is that their position? Well, one of them. Their position is different. One of them said, I mean, I asked him, I said, where's your badge? He pulls out his badge. I say, well, okay, that's good. Did you have any other badges? I asked him about the uniform of the highway patrol. And I said, do they wear a badge? Yes, they wear a badge. Do they wear patches? Yes, they wear patches. So in doing that, what I was doing was priming the fact that he didn't have any problem understanding this is a badge, these are patches. You don't pull someone over and show them a patch. This is my City of Phoenix patch. And it doesn't have any inherent authority with it. Badges do. Patches don't. He could understand it when I was asking that question. But he did say, on the record, I think that a patch is a badge. So it's commonly understood, at least from the evidence you got of the deposition, they know the difference between a badge and a patch on a uniform of an Arizona highway patrolman. Where does that leave you as far as this case is concerned, assuming you've established that? Assuming we've established that, then there is no good faith. distinction between a badge and a patch. When reading this statute that said it is illegal to wear a badge of the highway patrol or the Department of Public Safety, because the Department of Public Safety, in essence, is the equivalent of the highway patrol. But there are people that we established in the record as long ago as the motion to dismiss, which the judge denied, which it's interesting, because he denied the motion to dismiss. But then when we get the subjective testimony, well, I think a patch is a badge, then he says I'm going to reconsider and reverse the motion to dismiss. I will now, you know, find in favor of the defendants, based on the subjective testimony of the understanding of what a badge is. Is that the right test, subjective, the subjective testimony? No. No, it's objective. I mean, it is objective. It is not something that, because if it was subjective, I mean, it's funny because usually this cuts in the police officer's favor to say, well, subjectively, you know, you can throw out the fact that someone was, you can throw out so much if you get rid of the subjective portion of the test. But they have to live with it in some cases. And this is that case where they have to live with the objective test. And they can't just say subjectively, I believe this or I believe that. It's an objective test. There is nothing that the defendants have pointed to in the record that would somehow indicate that a patch is a badge, that that patch carries with it the authority, any authority, or that it is a badge. And given that fact, the statute, which strictly says, and remember this isn't in a use of force case we often talk about the rapidly evolving situation and the fact that the police officer is put into a predicament that oftentimes he's not. This one they were entirely, they could have said, you know, take the shirt off. They could have said whatever they want. They spent an hour going to find the book so they could find this law. And then they chose to cite him after looking at that law that says it is illegal to wear a badge of the Highway Patrol or two, it is illegal to impersonate with the intent to deceive. And they didn't designate on the actual ticket. They just cited him under either or both. But if you look at the police report, you know, they said we saw that this man, they also said from the waist up he looked like a Highway Patrol officer from the side. But that kind of falls apart. What happened to the citation? Citation, eventually it was dismissed. It was dismissed. It was dismissed. Who dismissed it? The police officers actually never even filed it. The officers, the Highway, well, I don't know if it's inside the record, but the Highway Patrol officers said we're not going to back that. And the City of Phoenix police officers were given a memorandum that said they were not to support the citation by testimony. And so there's a memo that is contained in the record, I believe, under 16. It's docket number 16, which I believe shows the memorandum. And Mr. Manhart can correct me. Counsel, you also, in addition to a Fourth Amendment complaint, have a First Amendment complaint. If I understand correctly, your client is fairly well known in the Arizona area, and he was passing out campaign literature for Proposition 101. Even aside from his garb, he was involved, as I understand your argument, using his First Amendment rights. What do we do with that? Do we get to that? Or if we agree within the Fourth Amendment, does a First Amendment come in? Or I understand even if you lose on the Fourth Amendment, you could still get a First Amendment claim. Well, it's my feeling that based — if we lose the Fourth — if we lose the Fourth Amendment claim, I think that you have a right not to be — I think if they had probable cause for the Fourth, that they would have it for the First. I think if someone's committing a crime, that you can arrest them. So I think it kind of fits under the umbrella of it without necessarily worrying. I'm not too sure of that. But your claim is that your client's First Amendment rights were chilled by the way he was treated. How many officers were involved? At different times, we have listed five because there was — well, there was Chief Deputy Hendershot, who's the one that called him out. There were Bailey, Whitney. But I understood there was seven. Seven around about that time. Yes. To arrest one person who wasn't doing anything wrong other than wearing inappropriate garb, if that's true, and exercising his First Amendment right. Correct, Your Honor. And also there was the statement that, why don't you run so I can give chase, which is, again, chilling. I'm going to reserve the minute and a half that I have. Counsel, will you please, while you're there, find the part of the record where the citation was dismissed? I can do that. I don't see it. If you could give me an excerpt of record citation. Thank you, Your Honor. Thank you. Counsel? Good afternoon, Your Honors. I'm Darrell Manhart. I represent the Appalese, the sheriff officers. Counsel? Yes. I read this local ordinance, and it seems obvious that the purpose of the law is what the title says, to deal with impersonation of a highway patrol officer. That's what it says. Your highway patrol officers wear pink underwear, that shows? No, Your Honor. So no one could possibly think that this fellow, Tar, was a highway patrol officer? I believe that Detective Whitney and Officer Bailey, who was the one with him both at deposition, said they did, after they saw his full outfit, they did not believe him to be an actual officer with the highway patrol. No kidding. Although Officer Bailey, I should correct myself. I think he said he wondered whether, he still wasn't sure whether he might be someone connected with the DPS who was somehow trying to spread his political message. Was he joking or lying? Pardon? Was he joking or lying? No, Your Honor. Neither. Come on. Pink underwear. Oh, I'm not sure if he's a real cop or not. Well, Your Honor, I don't really mean to take this into a ludicrous way. Let me ask you this same thing, basically, a little more technically. The part of the statute here that applies apparently is, or a badge of similar design that would tend to deceive. Right? Am I right? You're wrong, Your Honor. It is the part before that. Where is the badge of a member of the highway patrol? Yes. Well, was he wearing a badge of a member of the highway patrol? I thought he was only wearing patches that you get from a highway patrol net site and not a badge of the highway patrol. Your Honor, Detective Whitney testified that he believed a patch could constitute a badge. Why should I care what he believes? It's an objective test. Your Honor. I mean, he may believe it's Wednesday, but it's actually Tuesday. There is no definition of badge as constituting only a metal shield, Your Honor. And the definition, the dictionary definition, I should say there's no statutory definition. The dictionary definition of badge, which the district court judge cited to, includes any insignia or representation of office. I understand that. And we don't confer in advance, so I don't know if any of my colleagues have the same concerns that I do. And what got me about the statutory language is I thought, where's a badge? Well, everybody knows when a cop shows you his badge, it's a metal thing. It's not the patch. And if it was a real badge, they wouldn't be distributing it on the Internet. So I looked at the next part, badge of similar design that would tend to deceive. And I thought, well, I can't see what those tin badges say in the pictures that were in the exhibits. Maybe I'd be fooled by them in some circumstances. But with the pink underwear, it seems like part of the context. And so they wouldn't tend to deceive. Is there any reason we can't consider the pink underwear as part of the context of whether it's a badge of similar design that would tend to deceive? Well, Your Honor, I don't think that's relevant to whether the officer could have reasonably believed a patch could constitute a badge. But certainly if one looks at his entire outfit, if you consider that Mr. Tarr could have simply buttoned his shirt and tucked that into tan pants, I think that people would have reasonably, I mean, layman could have reasonably confused as to whether he was a highway patrol officer. But don't we look at the totality of the circumstances as they actually existed? Yes, Your Honor. So the totality of the circumstances as they actually existed did not include the shirt being tucked into tan pants. It included pink underwear. Well, Your Honor, you're correct. And the totality of the circumstances also include from the evidence that city police officers who were in the restaurant were questioning Mr. Tarr about where he got the patches, and they also called the highway patrol, that the highway patrol officer who arrived is the one who directed the sheriff to that particular statute and stated that that's what it was a violation of. And it's not unreasonable for Detective Whitney to, based on those totality of circumstances, to reasonably find that a patch could be a badge. A patch could be a badge. But that's subsection 1 of section 41, 1754, where's a badge. And as I understand it, the argument is that a patch can be a badge. But what do we do with the depositions of Whitney and Bailey where they clearly know the difference between a patch and a badge? They wear uniforms and they wear badges. Your Honor, I believe your question is based on an incorrect premise. Detective Whitney said that when he saw the full uniform, he did not believe Mr. Tarr was a member of the highway patrol. He did not say that he was not wearing a badge. He said he was wearing a badge and that it was the patch. That's under section 2. If you could just stay with section 1 for me for a minute. Without authority, where's a badge? I am under section 1, your Honor. Well, you just talked about impersonating a member of the highway patrol. That's section 2. I did not, your Honor. Detective Whitney was asked at deposition, and I maybe should point out that the statement of facts with all of the rest of the deposition pages that's in the excerpt of record I noticed over the weekend does not include any of the exhibits. So you do not have, if you're looking only at the excerpt of record, you are missing some of the deposition pages. If there are pages of the deposition you'd like us to look at, maybe you could tell us the page numbers. I believe it's pages 67, 65 to 67. 65 to 67 of Whitney? Yes, your Honor. Of the excerpts of record? I don't believe you're going to find all of those pages in the excerpt of record. Then we can't look at it. So I've got 65, 66, and 67 of the transcript of Whitney in the excerpt. Is that what you're talking about? Yes. I believe I've given you the correct page number, your Honor. Detective Whitney was specifically asked by Mr. Robbins at his deposition what he was — what part of the statute he cited, and he, by reading the language, he read the first portion of Part I. Judge Wallace, he read the language about who wears without authority a badge of the highway patrol. Which page is that? 65? It's under tab 9. Why don't you look at it? I believe it's pages 65 to 67, your Honor. Why don't you look at it at the same time as us so we can make sure we're all together? I'm missing a page. It's tab 9. I've got tab 9, but I'm missing that page. On page 65, your Honor. 65, 56. It goes at page 3. It should be right here. Yeah, you're missing a page. I'm missing a page. Sorry about that. All right, go ahead. If you'll go to, I believe — sorry, I'm a little nearsighted here. I think it's line 10. On page 65, Detective Whitney was asked what he had written up his report as the basis for the citation. And the language he's reading there is the first part of that statute. A person is guilty of a Class I misdemeanor who, without authority, wears the badge of a member of the highway patrol. That's what Detective Whitney, who signed the citation, said was the basis for the citation. The premise of your argument is we must accept whatever this particular cop thinks is what a reasonable cop would think? Your Honor, my premise in what I just said to you was only in directing you or directing Judge Wallace to what did the officer believe was the violation. What was he citing him for? Right. So he was not citing him for impersonating with intent to deceive. Although I make an argument that you might construe that in my brief, Detective Whitney did not say that. He only cited the or directed attention to the first part of the statute as what he believed was the violation when he wrote the citation. And his testimony was that the patches are badges. Yes, Your Honor. And I believe, pardon me while I, I believe it's the very next page. Right. Lines 11 through 13. It starts, I believe, on line 5, but it continues from there. Yes, Your Honor. Well, that's helpful, counsel. It wasn't in my, I didn't have that in my, that page was missing. Certainly. So if a policeman justified an arrest, he was supposed to arrest a tall white man and he arrested a short black man, and if he said, well, you look tall and white to me, then he'd be entitled to qualified immunity. Well, I'm not sure that I, I apologize that I don't see the connection between the two, Your Honor. All right. Let me ask you about something you probably, you've argued there is a connection between, and that's the McLam case in this case. I had trouble seeing it because McLam is wearing his police uniform. He's wearing a police uniform, the real one, with the real patches and the real badge and the real whistle, and he's got his police helmet visible in his political booth. Somebody complains to the police that this guy is handing out political literature in a police uniform. He really is wearing a police uniform. The cops come to the show and they say, don't do that. And he says, I have a right to do it. And you're saying that's just like this case. Well, Your Honor, the, I believe the point of Lam in the context of our case is, I should, I guess, back up and start with a negative. There's an absence of case law under the cited statute, 41-1754. There is the McLam case, which is under a city ordinance and not this statute. Different, different words. You're correct, Your Honor. Different insignia, as I recall. Different facts, different law. Well, Your Honor, it has some similarity of facts. Mr. McLam or retired officer McLam was using his uniform to advance a political proposition. A real one, no pink underwear. That's correct, Your Honor. And there's cases cited in our brief indicating why law enforcement agencies do not allow their officers to use uniforms for that purpose. And both Detective Bailey and Officer, I'm sorry, Detective Whitney and Officer Bailey indicated their awareness in the course of conducting what ultimately led to this arrest, that officers were not supposed to do that. That's one of the things that got their attention. But the connection here is if, as Mr. Robbins has already told you, there is no case law showing Detective Whitney why this would be unlawful, the only case law one can find that Your Honor doesn't find that close but is McLam, which has some similarities, in which a court did say it's improper to use the insignia or marks of authority of the officer. Facts and a different law. Well, Your Honor, I think they're close enough here. Your question suggests otherwise, but I think here that it supports the notion of Detective Whitney in having concern about someone wearing an official uniform shirt with the official patches advancing a political cause, and he has addition to that. I think advancing a political cause makes it worse. Pardon? I mean, you think, you keep mentioning that TAR was advancing a political cause. My thought was that makes TAR's case better because there's a First Amendment aspect to it, but you keep mentioning it on the basis that it makes his case worse instead of better, I guess by analogy to McLam. So you think the fact that TAR was advancing a political cause makes him more subject to arrest. Well, Your Honor. Is that right? No, Your Honor. I think I probably would have said yes. Are you disputing that he was advancing a political cause? He was a hired actor advancing the political cause of his employer, High Ground, Inc., a political consultant. Are you disputing that he was advancing a political cause or conceding it or claiming it or what? Well, Your Honor, I'm conceding that he's advancing the political cause of someone other than himself. I don't care if it's himself or somebody else. I want to know if it's political. It is, Your Honor. And I'm sorry if I'm going backwards in time, but you reminded me that I did not point out that Mr. Robbins said again here at oral argument today what he said in his briefs, and I've pointed out before that there's no support in this record for it, which is that the sheriff was a spokesman for a counter proposition. It was pointed out in the district court that that was based upon speculation. Mr. Robbins may have something specific in mind, but he's never put it in this record, and today he's saying that, too, and there is nothing in the record to show anything except that Mr. Tarr was there for a political proposition, and the position of anybody else is not shown by this record. Counsel, do you agree that this citation was never prosecuted? I agree, Your Honor. It was never turned in. What should we make of that? Well, Your Honor, I gave you in the statement of facts in our brief what record there was on that, and that was the follow-up by Detective Whitney was, despite what Department of Public Safety Officer Kimbrough had directed him to at the time, when afterwards they could not get any support from Department of Public Safety. The city of Phoenix police officers were directed not to give witness statements. Just as prosecutors make decisions about an exercise in the discretion not to pursue a case where they don't think there's a sufficient likelihood of conviction, the officers were not going to get support from anybody else here, so the citation was not turned in. Is it true what the blue brief said, that basically it took seven cops an hour to bust a guy and one of them refused? Your Honor, we're counting people who happened to be in the restaurant, I believe. If you recall, there were sheriff's deputies who only happened to attend that restaurant to eat their lunch. They're not outside standing with Mr. Tarr. There's Detective Whitney standing with him the entire time. The record, I believe, is Officer Bailey is going back and forth from outside where he is to inside, and there's testimony that various DPS officers arrived having been called, but there were only the two sheriff's deputies who were out there with Mr. Tarr outside the restaurant. There was another one in the restaurant, a supervisor in the department, who called headquarters and said, come and arrest Tarr, or something of that effect, right? Deputy Chief Hendershot called to the Department of Public Safety, and then he saw through the plate glass windows of the restaurant the two sheriff's officers and stepped outside and motioned them to come over and told them to find out what's going on with that guy in the DPS uniform. Other than that, Your Honor, there's no evidence. Did Hendershot testify that he thought it was a DPS uniform? I don't believe we have in the record any deposition testimony of Deputy Chief Hendershot. You're referring or you may be referring to a statement by a former sheriff's officer, Frakes, who ---- That's the one that refused to arrest? No. Officer Frakes says that Officer Whitney told him he wouldn't make the arrest. I'm sorry, Officer Bailey. According to Officer Frakes, Officer Bailey said in his presence that he would not make the arrest. Officer Frakes says he was afraid he was going to be asked to make the arrest. He wasn't asked to. He's the one that says that Deputy Chief Hendershot made a statement of that's impersonating when he saw Mr. Tarr. But other than that, there's nothing in the record about Deputy Chief Hendershot having any other role in this. Why would you need anything other than that to get past summary judgment on whether Hendershot had a role in this? I'm confused, Your Honor. We were ---- Frakes testified that Hendershot did have a role in it? Officer Frakes only submitted an affidavit. There's no other testimony of his. Did he say in an affidavit that Hendershot had a role in it? I believe I've just repeated to you what he said, which was that Detective ---- I'm sorry, Deputy Chief Hendershot had referred to his observation as that's impersonating. And summary judgment was awarded to the defendants, so I'm ---- I may have misunderstood what your question was. And I'm supposed to be summing up here, Your Honor. The two questions, I think, under Saussure are whether there was a clear ---- I'm sorry, whether there was a constitutional right violated, and the second one, whether clearly established law. I may have improperly lumped two items under the second discussion in the brief that maybe could have been separated differently, but here I believe there is a legitimate argument as to whether a patch constitutes a badge. The district court judge found that it could. There is some ---- there are some cases that not very many, and they're not exactly ---- in fact, they're nowhere near the circumstances of this, but I did cite a couple of cases in our brief where patches were treated as badges. So I think it was reasonable for that to be concluded here. And if that's the case, there was probable cause under the statute to cite someone for wearing a badge of the highway patrol. So one of the things that bothers me, maybe you could clear it up. If there's a dispute as to whether a patch can be a badge under Section 1, wouldn't you have to have a factual determination by the court, by the jury? In other words, isn't that a material fact that has not yet been decided, which would caution against having summary judgment and let it go to trial? Well, Your Honor, there have been at least two cases that have gone to the U.S. Supreme Court, I believe, where courts of appeals have made that distinction, and the Supreme Court said no in both of those. And I believe Saussure was one of them, that it is for the district court to make a determination, at least even if you find that there's a fact question on whether the constitutional right was violated, you still have to go forward on the clearly established part and look at it in terms of what circumstances faced the officer. So it's not appropriate for the district court judge to say qualified immunity has to await trial while we decide whether a patch is a badge. And, Your Honor, here we have, as far as what confronted Detective Whitney, facts that an actual uniform shirt with official patches was being worn, that he is directed to have to await trial. I suppose one alternative is just to take the police defendant's word for it that a patch is a badge and a badge is a patch, and treat that as a possible source for qualified immunity, that a reasonable policeman could have thought so. Another possibility is if it doesn't need summary judgment to decide whether patches and badges are the same thing, that we could decide it and say what a reasonable policeman would think as opposed to what this policeman purports to have thought or claims to have thought while he's defending himself. Is that right? That is only right with respect to the first part of the Saussure test. This Court could decide that as a matter of law, you believe or you're going to announce that a patch cannot be a badge. I'm not advocating that, obviously, but, I mean, I think the way your question is posed to me, you can decide that so that in the future there's no confusion on that. That doesn't change the analysis with respect to the second question, which is whether under the circumstances that faced Detective Whitney, could he have reasonably believed that a patch could be a badge? And only if you can say as a matter of law that there is no single competent officer who could have reasonably believed that a patch could be a badge, that's the only circumstances under which qualified immunity may be denied. I thought it was no reasonable officer. I didn't remember it as being no single competent officer. Well, Your Honor, Which is it? The language that says that it protects all but the plainly incompetent. You're inferring from that. I get it. Yes, Your Honor. Thank you, Counsel. Thank you. I'd like to address, you had asked Judge Wallinson for the citation. It is in citation or division 9 of the brief, and it's towards the end of the designation of record. It's actually, I thought it was in the response to a motion to dismiss, but in fact, it was in the defendant's motion for protective order docket number 32, and it's towards the end of that. It's after the. I'll spend your time on that. I'll find it. Okay. Thank you, Your Honor. The second thing I'd like to address is the court's, the deposition that Mr. Manhart read. Because at page 40 of the same deposition, it makes it obvious that Whitney is actually being pretextual when he claims that a patch is a badge. Because at page 40, I said, and I'm talking about the DPS shirts, are there patches on those shirts? Absolutely. Describe the patches, if you would. They're gold, red, and blue in color, and I believe they're shaped in the seal of the state image. Then I said later at lines 13, in terms of the uniforms, they have badges, don't they? Yes. What do they look like? Multipoint gold badge. How many points? It's more than one than I have. MCSO has six. DPS has seven. That's at page 40 of Whitney's. He knows what a badge is. He knows what a patch is. He knows the difference. It's only when he wants to get this guy that he has some confusion. Finally, in the 13 seconds I have remaining, in the McLam case, it actually clearly makes our point. Because in McLam, the officer was wearing a retirement badge and a retirement uniform with patches from the city of Phoenix. And the court distinguished the officer's retirement badge from the insignia shoulder patches at page 268, clearly saying there's a difference between these two. In fact, the lower court dismissed the charge related to the retirement badge because it wasn't actually a real badge. It was a retirement badge and found that the defendant had only violated the city ordinance by wearing the shoulder patches with the official insignia, therefore cementing the difference between a patch and a badge rather than creating confusion.  Thank you, Counsel. Tar versus Maricopa County is submitted. And we are adjourned until tomorrow morning at 9. All rise. This court for this session stands adjourned.
judges: Wallace, Kleinfeld, Rawlinson